UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) | Case No. 15-cv-5044 |
| v. | ) ) | Judge John W. Darrah |
| MICHAEL DEMARCO, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Michael DeMarco filed a *pro se* Motion to Vacate, Set Aside, or Correct [1] his sentence pursuant to 28 U.S.C. § 2255. For the reasons provided below, this Motion [1] is denied.

## BACKGROUND

On May 23, 2012, DeMarco was charged by indictment with one count of wire fraud. After a trial, the jury returned a verdict of guilty on June 20, 2013.[1] The applicable advisory guidelines range for DeMarco's offense was 78 to 97 months, and he was sentenced to 48 months' imprisonment. DeMarco appealed his conviction and sentence, and the Seventh Circuit affirmed on April 24, 2015. On June 8, 2015, DeMarco filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255.

DeMarco raises six claims in his petition, all of which allege ineffective assistance from his trial counsel, Pablo deCastro. DeMarco alleges that deCastro:

    1.     provided inadequate advice to him regarding whether to plead guilty;

---

[1] A complete account of the facts giving rise to DeMarco's indictment and the details of his trial is contained in the Seventh Circuit's opinion in *United States v. DeMarco*, 784 F.3d 388 (7th Cir. 2014).

2.  was not adequately prepared for trial;

3.  advised him to testify at trial and not to provide complete information to the probation officer;

4.  did not subject the prosecution's case to meaningful adversarial testing;

5.  failed to perfect impeachment of government witness Michael Suarez; and

6.  committed legal malpractice.

## LEGAL STANDARD

Petitioner's *pro se* petition is construed liberally. *Ward v. Jenkins*, 613 F.3d 692, 700 (7th Cir. 2010). A prisoner convicted of a federal crime may move the district court that imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255. A petitioner must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief is only available in cases where jurisdictional or constitutional errors have caused a "complete miscarriage of justice." *Harris v. U.S.*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). This is an "extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007).

## ANALYSIS

Petitioner must demonstrate two elements to prove ineffective assistance of counsel. First, "the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the performance prong, a court "consider[s] the

reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)). Second, "the defendant must show that the deficient performance prejudiced the defense . . . [*i.e.*] that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. "Only a significant increase in the sentence, attributable to counsel's error, constitutes prejudice." *Durrive v. United States*, 4 F.3d 548, 551 (7th Cir. 1993).

*Advice on Whether to Plead Guilty*

DeMarco alleges that his counsel, deCastro, provided inadequate advice to him on whether he should plead guilty; specifically, deCastro failed to inform him of an offered plea deal, failed to negotiate on his behalf, and failed to explain the risks of going to trial. DeMarco concedes in his petition that counsel set up a meeting with the prosecutor, the FBI agent, and DeMarco to discuss a plea deal. deCastro states in his sworn affidavit that he did engage in plea negotiations with the Government and received multiple plea agreements. (Dkt. 9 Exh. A.) However, deCastro also states that DeMarco would not "admit or accept that he formed the criminal intent at the time of the actual money transfer." (Dkt. 9 Exh. A.) This statement is consistent with DeMarco's Petition, which states that he had issues with the "wording of the wire fraud statute." (Dkt. 1.) Based on the record, deCastro did enter into plea negotiations on DeMarco's behalf, but DeMarco did not admit he violated the applicable wire fraud statute.

DeMarco's claim that deCastro failed to explain to him the risks of going to trial is similarly refuted by deCastro's affidavit. deCastro states that " [i]t is absolutely false that

3

[deCastro] did not warn [DeMarco] of the danger of going to trial. . . . [deCastro] was very clear with [DeMarco] about the effects of the provisions on acceptance of responsibility, and of the fact that if he were convicted after testifying the court would very likely impose the enhancement for obstruction of justice." (Dkt. 9 Exh. A at 4, 5.) Even if deCastro did not convey this information, DeMarco did not suffer any prejudice because he refused to admit he committed wire fraud and it is reasonable to assume that the result of the proceedings would have been the same.

*Preparation for Trial*

DeMarco also argues that deCastro was not adequately prepared for trial. DeMarco only gives one example of this inadequate preparation, alleging that deCastro "asked for an unredacted copy of a form that had the address of the bank on a statement and never asked [DeMarco] why the statements were mailed to [DeMarco] at the bank instead of Suarez's residence." (Dkt. 9 at 5.) deCastro again refutes DeMarco's claims, stating that he specifically asked DeMarco about the unredacted portion of the document in question and was told by DeMarco that Suarez's address was on that document. (Dkt. 9 Exh. A at 3.) DeMarco fails to show that there exists a reasonable probability, that for deCastro's lack of knowledge of this document, the result of the proceedings would have been different. First, DeMarco was present when the original document was prepared and could not have been "unduly surprised" with respect to the unredacted information. *United States v. DeMarco,* 784 F.3d 388, 396 (7th Cir. 2014). Second, DeMarco testified at trial that he had committed the crime for which he was convicted. DeMarco testified that he kept and spent Suarez's money, that he "did [Suarez] wrong" and that he "agreed with everything the prosecution was saying except for the fact that

4

[DeMarco] started this fraud when [DeMarco] first met Mr. Suarez." (Dkt. 1; *Demarco*, 784 F.3d at 393.) It is not reasonably likely that this small detail regarding DeMarco's address would have changed the outcome of his trial.

*General Advice from Counsel*

DeMarco argues generally that deCastro provided inadequate advice throughout the trial and pretrial process. DeMarco alleges that deCastro advised him to testify even though deCastro knew that he agreed with the prosecution's presentation of the case except for when he began to defraud Suarez. He further alleges that deCastro failed to utilize corroborating witnesses at trial, and that deCastro advised him not to tell his probation officer anything "bad about the way [DeMarco] was raised." (Dkt. 1.) DeMarco argues that these things affected both the outcome of his trial and his sentence.

First, DeMarco's argument regarding advice regarding information given to his probation officer is rebutted by the sentencing memorandum submitted by deCastro and deCastro's affidavit. deCastro denies that he advised DeMarco to withhold information from the probation officer and made several § 3553(a) arguments about DeMarco's history and characteristics in the sentencing memorandum. Second, when asked at trial if he had been adequately advised of his right to testify and his right to remain silent, DeMarco admitted that he had. DeMarco admitted that deCastro had discussed with him "the pros and cons" and the "possible pitfalls of testifying," and the "possibility of impeachment." deCastro represented to the Court, in DeMarco's presence, that he had "gone over all the possible strategies and considerations in determining whether it was appropriate for [DeMarco] to testify." DeMarco further admitted that he knew his decision to testify was his alone, regardless of the advice he received from deCastro.

5

(Trial Transcript at 245:13-21; 246:4-7.) deCastro's affidavit corroborates that he warned DeMarco of the possible pitfalls of his admissions. (*Id.* at 246:16-18; Dkt. 9 Exh. A.) DeMarco provides no persuasive argument that this alleged advice affected either the outcome of his trial or his sentencing.

*Meaningful Adversarial Testing*

DeMarco's fourth claim reiterates that he does not believe that deCastro adequately prepared for trial and repeats his argument regarding deCastro's efforts to secure a plea deal. As stated above, this argument is not persuasive.

*Impeachment of Michael Suarez*

DeMarco further argues that deCastro failed to impeach Suarez at trial using a deposition taken a year prior to trial. DeMarco lists several alleged differences between Suarez's testimony and his deposition, arguing that if deCastro had impeached Suarez, the jury would not have "seen [him] in such a poor light." (Dkt. 1 at 15.) At trial, deCastro sought to elicit testimony from the FBI agent regarding Suarez's prior inconsistent statements, but the Government objected. The Court sustained the objection, ruling that the testimony was extrinsic evidence on a collateral issue and inadmissible. *DeMarco*, 784 F.3d at 394. On appeal, the Seventh Circuit held that any error in the evidentiary ruling was harmless. *Id.* at 395. Thus, failure to impeach Suarez at trial cannot be imputed to deCastro's actions and is not a result of ineffective assistance of counsel.

*Legal Malpractice*

Finally, DeMarco argues that deCastro's representation of him was so negligent as to constitute legal malpractice. As an example of this "failure to use reasonable care," DeMarco

alleges that deCastro failed to have "the builder" and bank employees testify on his behalf. Under direct examination at trial, DeMarco did not provide the name of "the builder" and deCastro states in his affidavit that DeMarco had no further information on this potential witness, not even the name of a company. deCastro could not investigate or interview "the builder" without any further information from DeMarco, thus an alleged failure to have him testify on DeMarco's behalf does not constitute ineffective assistance of counsel.

*Certificate of Appealability*

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant on a *habeas* petition. A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made a substantial showing of the denial of a constitutional right; and, accordingly, a certificate of appealability shall not issue. Petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

**CONCLUSION**

For the reasons discussed above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [1] is denied. No certificate of appealability shall issue.

Date:      March 1, 2016          
JOHN W. DARRAH
United States District Court Judge